UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America, )<br>                Plaintiff, )<br>                                            )<br>v.                                           )<br>                                            )<br>Tyran Floyd, )<br>                Defendant. ) | No. 12 CR 50012<br>Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

    Defendant Tyran Floyd has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the bases that his underlying health conditions put him at risk of developing serious complications if he were to be infected with COVID-19, and because of changes in sentencing law. For the reasons that follow, his motion [43] is denied.

**BACKGROUND**

    On February 19, 2013, Mr. Floyd pleaded guilty to one count of possession with intent to distribute cocaine base. In exchange for his guilty plea, the government dropped several other counts including for possession with intent to distribute marijuana, heroin, and cocaine, possession of a firearm by a felon, and possession of a firearm in furtherance of a drug trafficking crime. United States District Judge Kapala, who has since taken inactive senior status, adopted the probation office's calculation of Mr. Floyd's advisory sentencing range under the U.S. Sentencing Guidelines and on June 13, 2013 sentenced Mr. Floyd to 188 months' incarceration, the low end of his advisory Guidelines range. Dkt. 38. In the Presentence Investigation Report, the probation officer determined that under U.S.S.G. § 2D1.1(c)(9) Mr. Floyd's base offense level was 22 based upon the quantity of not only cocaine base, but also the marijuana, heroin and cocaine he admitted in his plea agreement should be included as relevant conduct, all of which totaled the equivalent of 78.2062 kilograms of marijuana. PSR [28] at 6-7. The probation officer added two levels under U.S.S.G. § 2D1.1(b)(1) because Mr. Floyd possessed a dangerous weapon. *Id.* at 7.

    Although that calculation yielded an adjusted offense level of 24, the probation officer also concluded that Mr. Floyd was a career offender under U.S.S.G. § 4B1.1 because of two prior felonies that were either a crime of violence or a controlled substance offense: a 2005 conviction in state court in Georgia for aggravated assault, and a 2008 conviction in state court in Illinois for possession with intent to deliver cocaine near a church. *Id.* at 7, 9-10. Because he was a career offender, his adjusted offense level jumped to 34. *Id.* at 7. His criminal history category also jumped from V and VI, and his sentencing range was 188-235 months. *Id.* at 11, 19. Mr. Floyd is serving his sentence at USP Victorville, and his anticipated release date is February 11, 2028. *See* https://www.bop.gov/inmateloc/ (last visited July 19, 2022).

Before the Court is Mr. Floyd's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. 43. After the Court received the motion, it assigned the federal defender to represent Mr. Floyd, and a panel attorney filed a supplemental memorandum plus medical records. Dkts. 65 and 66. The motion is now fully-briefed, plus the probation department filed a supplemental PSR detailing his disciplinary record and accomplishments while incarcerated, Dkt. 48.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020).

Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). Although it is undisputed that Mr. Floyd submitted to his warden a request for compassionate release, the government contends that the reasons Mr. Floyd sought a compassionate release from the warden were different than the reasons he offers now, and therefore he has not fully exhausted. But the Court need not resolve whether Mr. Floyd exhausted because, even assuming that he did, his motion would still fail.

**A.    Extraordinary and Compelling Reason**

Mr. Floyd argues that he has identified two different extraordinary and compelling reasons that make him eligible for a compassionate release—changes to sentencing laws, and his underlying medical conditions. The Court addresses each in turn.

**1.    Sentencing Laws**

Mr. Floyd contends that if sentenced today, he would be subject to a lower sentence because of changes to the laws governing drug offenses. In his *pro se* motion, he argues generally that the First Step Act of 2018 lowered the sentence for every drug offense, but he does not specify how it would have affected the sentence he faced. Motion [43] at 2. The First Step Act of 2018 made retroactive the Fair Sentencing Act of 2010, and it was the Fair Sentencing Act of 2010 that lowered sentences for offenses involving cocaine base. *See United States v. Fowowe*, 1 F.4th 522, 524 (7th Cir. 2021). Mr. Floyd already reaped any benefit from those changes when sentenced in 2013.

In the supplemental memorandum, counsel offers two additional reasons why Mr. Floyd's sentence would be lower today. First, he contends that Mr. Floyd's drug quantity—the equivalent of 78.2062 kilograms of marijuana—would now carry of base offense level of 20,

rather than 22. But Mr. Floyd's base offense level was 34, dictated not by his drug quantity, but rather by the fact that he was a career offender. *See* PSR [28] at 7. Second, counsel contends that Mr. Floyd would no longer qualify as a career offender because the two prior offenses on which the enhancement was premised no longer qualify as predicate offenses. Counsel contends that the 2005 drug offense from Georgia no longer qualifies as a predicate offense, but the 2005 conviction was for aggravated assault, an enumerated offense under U.S.S.G. 4B1.2(a)(2). Counsel also contends that under *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), Mr. Floyd's 2008 cocaine conviction no longer qualifies as a predicate offense because the Illinois statute defines cocaine more broadly than federal law. But *Ruth* involved a sentencing enhancement under a statute, specifically the 30-year maximum sentence faced by defendants with "a prior conviction for a felony drug offense." *Id.* at 645-46 (citing 21 U.S.C. § 841(b)(1)(C)). *Ruth* specifically states that it does not pertain to the career offender enhancement under the advisory Guidelines. *Id.* at 654 ("We see no textual basis to engraft the federal Controlled Substances Act's definition of "controlled substance" into the career-offender guideline.").

The defendant's arguments that changes in sentencing laws constitute an extraordinary and compelling reason for a compassionate release fail for another reason: such arguments must be made under 28 U.S.C. § 2255[1] or similar provisions allowing a defendant to attack his sentence. Defendants may not do an end-run around the limitations that apply to such motions by casting arguments in terms of a compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See United States v. King*, No. 21-3196, __ F.4th ___, 2022 U.S. App. LEXIS 18987, at *1 (7th Cir. July 11, 2022) ("There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.").

### 2. Underlying Medical Conditions

Next, Mr. Floyd contends that his underlying health conditions put him at greater risk of developing serious complications from COVID-19. The Court prefaces its analysis of Mr. Floyd's arguments regarding his health conditions and the risks he faces with the recognition that it, as well as the rest of the world, is still learning about the COVID-19 virus and therefore, is making its best judgments based upon the information that is currently available. *See, e.g., Cassell, et al., v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("Governments and citizens have thus been forced to act with imperfect knowledge."

In his *pro se* motion, he asserts that suffers from high blood pressure. Motion [43] at 3. But he provides no supporting medical records, and according to the Bureau of Prisons' records, on October 23, 2020, he denied that he suffered from hypertension, *see* Dkt. 68-1 at 16, and on June 23, 2021, his blood pressure was 123/76,[2] *see* Dkt. 682 at 1. In the supplemental

---

[1] In his plea agreement, Mr. Floyd waived his right to collaterally attack his sentence under 28 U.S.C. § 2255. Plea [27] at 12-13. Neither side discusses the impact, if any, of that waiver on his ability to succeed on motion under § 3582(c)(1)(A). Because, as discussed later, the factors under 18 U.S.C. § 3553(a) do not favor a compassionate release, the Court need not address the waiver further.
[2] Hypertension begins at 130/80. *See* https://www.cdc.gov/bloodpressure/about.htm (last visited July 19, 2022).

memorandum, his counsel notes that Bureau of Prisons' medical records identify his current health problems as including acute nasopharyngitis (the common cold), dermatitis, ringworm, and nearsightedness, and that he once received ibuprofen for a shoulder injury that occurred playing basketball, but counsel never discusses whether or how any of these conditions make Mr. Floyd susceptible to serious complications from COVID-19. Suppl. Mem. [66] at 6-7. The supplemental memorandum also refers to a BOP medical record from October 2020, which counsel describes as reporting that Mr. Floyd suffered from "[s]hortness of breath, stuffy nose, chills, body aches, sore throat, loss of taste or smell and abdominal pain," which counsel describes as "[o]bviously, something more serious than merely the common cold." *Id.* at 8 (citing Dkt. 65 at 19). But that record states not that Mr. Floyd suffers from those conditions, but rather that he is "[c]onsistently asymptomatic" for them. Dkt. 65 at 19. Counsel also points out that Mr. Floyd has received three doses of the Pfizer vaccine. *See* Suppl. Mem. [66] at 7, *see also* Dkt. 65 at 58 (doses one and two), Dkt. 68-4 (dose three).

      Mr. Floyd has not pointed to any evidence that any of his medical conditions put him at risk of serious complications from COVID-19. According to the CDC, hypertension could possibly make one more likely to become sick from COVID-19,[3] but there is no support in the medical records provided that Mr. Floyd has hypertension. In addition, Mr. Floyd has presented no evidence of "why, despite his vaccination, his medical risks are extraordinary compared to the general population. . . . By simply listing diagnoses, he has not done so." *United States v. Hoskins*, No. 21-2912, 2022 U.S. App. LEXIS 16690, at *3 (7th Cir. June 16, 2022). He argues generally that his facility, USP Victorville, has no plan to address COVID-19, yet he has been vaccinated and received a booster dose while there, he has not established that he cannot benefit from the vaccine or that he faces greater risks in prison than if he were released, *see United States v. Bechel*, No. 21-2246, 2022 U.S. App. LEXIS 19050, at *2 (7th Cir. Feb. 24, 2022), and USP Victorville currently reports that just one inmate and one staff member are confirmed positive for the virus. *See* https://www.bop.gov/coronavirus/ (last visited July 19, 2022). Mr. Floyd has not established that he is at a greater risk of becoming seriously sick from COVID-19 because of any underlying medical condition, or because of operations at USP Victorville, and therefore his health does not constitute an extraordinary and compelling reason for a compassionate release.

**B.    Sentencing Factors under 18 U.S.C. § 3553(a)**

      Finally, even if Mr. Floyd had identified an extraordinary and compelling reason for a compassionate release, the Court would exercise its discretion and not grant one because of its review of the sentencing factors under 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from future crimes by the defendant; and

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 19, 2022).

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). To those ends, the court must consider the following factors:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    . . .

    (3)    the kinds of sentence available;
    (4)    the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
    (5)    any pertinent policy statement [in the Sentencing Guidelines];
    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

    The defendant contends that the sentencing factors favor an early release because he did not flee to avoid arrest, there is no evidence of any injury to law enforcement or attempt to obstruct justice, and the more than ten years he has remained in custody sufficiently reflects the seriousness of his offense and deters him and others from engaging in similar conduct. He also notes that the six years of supervised release he will serve will provide him the training and care he needs to return to society as well as any additional training he might receive while incarcerated. The Court notes the numerous courses Mr. Floyd has completed while incarcerated, and while the Bureau of Prisons reports a few disciplinary infractions, they occurred mostly early in his term of incarceration, and no infractions have been reported since 2018. Suppl. PSR [48] at 3-4, 8-9. Mr. Floyd has also submitted letters from friends and family reporting that he is remorseful and will be a productive member of society upon his release. Motion [66] at 12-14.

    The Court takes into account the favorable aspects of Mr. Floyd's character and his offense. In particular the Court commends Mr. Floyd for the many courses he has completed while incarcerated and on his efforts to prepare himself to be reintegrated into society and to become a productive member. However, the Court must balance the favorable aspects of Mr. Floyd and his history and offense against the less favorable aspects. The defendant's offense involved large quantities of multiple types of drugs. He admitted that he possessed cocaine base with the intent to distribute it, which demonstrates his desire to profit from the addictions of others, and to perpetuate the drug trade within his community. In addition, his offense involved the possession of a firearm, creating the potential for violence and serious harm to others. This offense followed a significant number of other convictions, such as for resisting a peace officer in 2004, aggravated assault and possession of a firearm in 2005, and drug convictions in 2004 and 2005, and 2008, the most recent one of which also involved a firearm. PSR [28] at 8-10. His history of criminal activity is so significant that, as a result, he is a career offender. In

addition, he had been on parole for less than two months for the 2008 drug and firearm offense when he committed the instant offense. *Id.* at 4, 10. The fact that previous convictions and sentences did not deter further criminal conduct warrants a significant sentence in this case. On balance, the seriousness of his offense including the possession of a firearm, plus the need for a significant sentence to deter Mr. Floyd and others from engaging in similar conduct in the future, lead this Court to conclude that, on balance, the 188-month sentence that Judge Kapala imposed remains a sentence that is sufficient, but not greater than necessary, to serve the purposes of sentencing, and therefore the Court would not exercise its discretion to reduce that sentence.

## CONCLUSION

For the reasons given, Mr. Floyd's motion for a compassionate release [43] is denied.

Date: July 19, 2022        By: _____
                                Iain D. Johnston
                                United States District Judge